CLERK'S OFFICE
A TRUE COPY
Mar 05, 2025
s/ Kameron Reed
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )        Case No.   25   MJ   7
Records and information maintained by "Life360" for the account )
associated with User ID: 2b1a3d8f-3073-4383-ad54-3a88a47eeafd )
and Phone Number 414-940-0135 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2119 | Carjacking |
| 18 U.S.C. § 924(c) | Use of a Firearm during the Commission of a Violent Crime |

The application is based on these facts:

Please see Affidavit.

☐ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *) is requested under* 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SEAN CARLSON                    Digitally signed by SEAN CARLSON
                                Date: 2025.03.04 11:01:39 -06'00'

*Applicant's signature*

Special Agent Sean Carlson

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: __03/05/2025__

*Judge's signature*

City and state: Milwaukee, Wisconsin            U.S. Magistrate Judge William E. Duffin

*Printed name and title.*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Sean Carlson, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with certain account(s) that is stored at premises owned, maintained, controlled, or operated by Life360, Inc. ("Life360"), a service provider headquartered at 1900 S. Norfolk Street, San Mateo, California 94403. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Life360 to disclose to the government copies of the information (including the content of communications) further described in Attachment B. Upon receipt of the information described in Attachment B, government-authorized persons will review that information to locate the items also described in Attachment B

2.      I am employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") assigned to the Milwaukee Field Office since November 2015. I have been employed as a full-time law enforcement officer for approximately fifteen years. Prior to my employment at ATF, I was a Patrol Officer at the Hammond Police Department in Hammond, Indiana for over four (4) years, and then I served approximately five (5) years as a Federal Air Marshal with the U.S. Department of Homeland Security.

3.      As a Special Agent, I have participated in the investigation of firearms and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and

the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances.

4.     Based on my training, experience and participation in drug trafficking and firearms trafficking investigations, I know and have observed the following:

5.     Based on my training and experience, I have become familiar with the language utilized over the telephone to discuss firearms and drug trafficking and know that the language is often limited, guarded, and coded. I also know that firearms and drug traffickers often use electronic devices (such as computers and cellular phones) and social media to facilitate these crimes. Based on my experience, I know that firearms traffickers may keep photographs of these items on electronic devices.

6.     I also know that drug traffickers and firearms traffickers commonly possess—on their person, at their residences, at their places of business, in their vehicles, and other locations where they exercise dominion and control—firearms, ammunition, and records or receipts pertaining to such.

7.     I know that firearms traffickers and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses. I also know that firearm and drug traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearm and drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement

2

8.    The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9.    There is probable cause to believe that evidence of violations of the following laws of the United States, including the things described in Attachment B, will be found in the property listed in Attachments A, respectively evidence of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c)(use of a firearm during the commission of a violent crime), Title 18 U.S.C. § 922(g)(1) (prohibited person in possession of a firearm) and Title 18 U.S.C. § 1951 (Hobbs Act Robbery) is housed within the aforementioned Life360 account.

## PROBABLE CAUSE

### August 17, 2024 - Carjacking (Location 1)

10.    Affiant has reviewed Milwaukee Police Department (MPD) reports associated with MPD IR C2408170037 which were related to a carjacking investigation.  Those reports document how on August 17, 2024, MPD responded to an armed carjacking which occurred at 2609 N. Fratney Street, Milwaukee, Wisconsin (Location 1).  Those reports reflect that when officers arrived, they spoke with victim, M.P. who stated he/she was working as an Uber driver when he/she had been carjacked by two unknown black males.

11.    Those reports reflect that M.P. was interviewed by Detective Carloni, who reported M.P. made the following statements: M.P. explained they had been an Uber driver for approximately six years and identified their vehicle as a 2020 Black, Dodge Durango SUV with Wisconsin license plate 700XRF (VIN: 1C4SDJCTXLC262104).  M.P. related they had accepted

3

an Uber ride request at approximately 5:15 AM (CST) on August 17, 2024, with a pickup location of 2630 N. Fratney Street in Milwaukee, Wisconsin. M.P. explained while traveling to pick up the Uber customer they were stopped at a redlight traveling East at the intersection of E. Center Street and N. Holton Street in Milwaukee, Wisconsin. At this intersection, M.P. explained they observed a black four door sedan with heavy window tints stopped at the same traffic light facing South. When M.P. received the green light to proceed East through the intersection, M.P. observed the aforementioned black sedan disregard the red traffic light, make a left turn to follow M.P. East on E. Center Street. M.P. stated they turned South on N. Fratney Street and pulled over in front of 2609 N. Fratney Street to pick up the Uber customer. At this time, M.P. explained the black sedan slowly drove by before turning West onto E. Clarke Street. M.P. recalled a "short time" later someone (Suspect 1) approached his/her vehicle after coming from the Northwest corner of N. Fratney Street and E. Clarke Street. M.P. stated Suspect 1 approached his/her vehicle with a silver handgun pointed at him/her. M.P. explained Suspect 1 knocked on the vehicle window with the handgun and demanded the victim exit the vehicle and give up the vehicle keys. M.P. explained he/she complied with the request and began walking North on N. Fratney Street away from his/her vehicle. M.P. recalled hearing Suspect 1 yell for Suspect 2 to get in the vehicle. M.P. stated they observed Suspect 2 come from the West alleyway on N. Fratney Street and enter the passenger seat of M.P.'s vehicle. Suspect 1 entered the driver's seat, and the vehicle fled South on N. Fratney Street before turning and going West on E. Clarke Street.

    12.    Detective Carloni further reported that M.P. described Suspect 1 as a black male, approximately 20 years old, 5'7" to 5'8", thin build with a short afro and a dark complexion. M.P.

stated Suspect 1 was wearing a black sweatshirt with the hood cinched around their face and was armed with a silver handgun.

13.     M.P explained his/her black iPhone 12 with a black and red Air Jordan case was taken in addition to their State of Wisconsin ID and $60 in United States Currency. As of January 30, 2025, agents still believe this property to be outstanding and not yet recovered. I am aware Uber drivers utilize a cellular device to accept ride requests and must use those same devices for in-car information during the ride such as the suggested route of travel. These devices are often mounted and displayed in a manner that the passengers can view the information, and the driver can receive information handsfree. It is likely the device reported stolen by M.P. is also the device he/she utilized to conduct their Uber business.

14.     Detective Carloni reported that M.P. described Suspect 2 as a black male but could not provide any further detail.

15.     Detective Bongel was assigned video-surveillance follow up and reported he recovered video surveillance footage from nearby store, Riverwest Co-Op located at 733 E. Clarke Street. SA Rutter obtained a copy of these recordings and reviewed them which depicted the following: the victim's vehicle can be observed traveling South on N. Fratney Street before pulling alongside the West curb and facing South. Review of the surveillance cameras revealed the suspect's vehicle, a dark four door sedan passed the victim's vehicle traveling South on N. Fratney Street where it then turned West onto E. Clarke Street. The suspect vehicle could be seen stopping in front of 726 E. Clarke Street where two suspects (both passengers) exited the vehicle and began walking towards and then North on N. Fratney Street towards the victim's vehicle. The suspect vehicle can be further described as a black, four door sedan with window tints. The vehicle

5

appeared to have dark wheels and a license plate affixed to the front and rear bumpers. Below is a picture of the suspect vehicle taken from the surveillance footage.



16.     That video further shows both suspects to be wearing dark clothing. The two suspects can be seen on video approaching the victim's vehicle before committing the carjacking. Suspect 1 approached the driver's side of the vehicle and could be seen raising their arm towards the vehicle as they neared. It should be noted the victim previously related to Detective Carloni that Suspect 1 pointed a firearm at them while approaching. Suspect 2 approached the passenger side of the vehicle. After depriving the victim of their property, Suspect 2 could be seen fleeing on foot back to the suspect vehicle and Suspect 1 drove the victim's vehicle South on N. Fratney Street and then West on E. Clark Street where it passed the suspect vehicle. Both vehicles traveled West on E. Clarke Street to flee the area.

**August 17, 2024 – Fleeing/Eluding (Location 2 and 3)**

17.     Affiant further reviewed MPD reports associated with MPD IR C2408170036 which were related to a fleeing/eluding offense from that same date involving the victim's vehicle after the carjacking. Those reports reflect that MPD Squad 5340 was dispatched to assist with the aforementioned carjacking incident.  Officer Roembke reported that while traveling to the site of the carjacking with his partner Officer Gregory, they observed the black Dodge Durango headed West on W. Center Street at the intersection of N. 27th Street in Milwaukee. The driver of the Dodge Durango immediately started accelerating at a high rate of speed headed west from N. 27th Street (Location 2).  MPD officers activated their emergency lights and siren to affect a traffic stop, but the driver refused to stop while accelerating to even higher speeds. The vehicle pursuit continued for 1.9 miles as the driver disregarded red traffic lights and stop signs. MPD lost sight of the Dodge Durango on N. Appleton Avenue and W. Center Street in Milwaukee, Wisconsin (Location 3).  The vehicle's speed reportedly reached over 90 miles an hour and included driving on the wrong side of the road.

**August 17, 2024 – FLOCK hit (Location 4)**

18.     On August 17, 2024, at approximately 10:41 AM (CST), the victim's vehicle was recorded by an automated license plate reader traveling North on N. 91st Street through W. Silver Spring Drive in Milwaukee, Wisconsin (Location 4).  SA Rutter learned this information through a license plate query in the FLOCK system.



**August 18, 2024 – Vehicle Recovery**

19.     On August 18, 2024, MPD responded to the area of 5722 N. 84ᵗʰ Street in Milwaukee, Wisconsin after receiving information that the Dodge Durango was pinging there. This information was documented in a report written by Officer Leidy under MPD IR C2408170037.  The report stated upon arrival, Officer Leidy and Officer Rummel located the victim's vehicle parked directly across from 5722 N. 84ᵗʰ Street.  The vehicle was observed to have a red dealership placard on the rear bumper and the white stripes on the hood had been removed. Officers conducted surveillance of the vehicle and observed an unknown black male subject wearing a black zip-up hooded sweatshirt and black jogging pants with a blue stripe down the exterior of both legs exit the south door of 8500 W. Fond du Lac Avenue.  Officers observed the unknown black male approach the vehicle where the subject appeared to take a photo of the vehicle. The subject then re-entered into the building. Officers continued to monitor the vehicle but ultimately decided to approach and recover the vehicle.  The vehicle was recovered and towed

8

as evidence without incident.  Below is an image depicting the proximity of 5722 N. 84th Street and 8500 W. Fond du Lac Avenue.



**Vehicle Processing**

20.     On August 19, 2024, Detective Barker responded to MPD's tow lot to process the recovered vehicle with Forensic Investigator Roeglin.  Detective Barker's report detailed several items of evidentiary value were recovered from the vehicle including, but not limited to, an iPhone with an unknown model, unknown serial number, contained on Milwaukee Police Department Inventory No. 24023778, Item 1. Photographs of the recovered device showed it to be blue and without a protective case.  It should be noted the victim previously described their personal device as a black iPhone housed within a red and black Air Jordan branded protective case.  Investigator Roeglin also obtained 7 DNA swabs and 12 latent print lifts.  Those prints were compared to a database of known fingerprints and that analysis identified two such latent prints (from the driver's door window and the rear driver's side door) as that of Michael A. Johnson (DOB: XX/XX/2005).

9

**Michael A. Johnson**

21.     A review of Wisconsin Circuit Court records revealed Michael Johnson received an adult felony conviction under Milwaukee County Case 2021CF000045 for violating Wisconsin statute 940.20(1) – Battery by Prisoners.  This conviction prohibits Michael Johnson from legally possessing firearms.

22.     Additionally, Michael Johnson has numerous juvenile felony convictions:

- 2022JV000327 – Armed Robbery, 943.32(2)

- 2020JV000529 – Robbery with Use of Force (943.32(1)(a)), Drive or Operate Vehicle w/o Consent (943.23(3))

- 2019JV000362 – Drive or Operate Vehicle w/o Consent (943.23(3))

- 2018JV000716A – Operate Vehicle w/o Consent-Passenger (943.23(4m))

- 2018JV000716 – Robbery with Use of Force (943.32(1)(a)), Operate Vehicle w/o Consent-Passenger (943.23(4m))

23.     Your affiant is aware on August 26, 2024, Detective Carloni showed a photo array to the victim which included a photograph of Michael Johnson.  This event is memorialized in report associated with MPD IR C2408170037.  Additionally, it should be noted the victim did not identify anyone in the photo array.  Your affiant is aware one of the suspect's was previously described as having their hood up and cinched around their face during the carjacking.  This manner of facial obstruction could have limited the victim's ability to get a strong look at the suspect's face during the crime.

10

**Concerning Uber Technologies**

24.     On October 11, 2024, the Honorable William Duffin, U.S. Magistrate Judge in the Eastern District of Wisconsin, signed a federal search warrant for records from Uber Technologies. Those records revealed that Michael Johnson did not order the rideshare request on the morning of the carjacking incident and the ride request was ultimately canceled by the requester who subsequently re-booked.  This sequence is consistent with an uninvolved party who was seeking a legitimate ride.

**Timing Advance Area Searches and Tower Dumps**

25.     On September 23, 2024, the Honorable Nancy Joseph, U.S. Magistrate Judge in the Eastern District of Wisconsin, signed a federal search warrant which authorized the cellular area searches and the collection of timing advance data in relation to the offenses listed above.  This warrant returned thousands of lines of cellular data and information which was then analyzed to isolate only those identifiers whose records were consistent with the facts of the investigation, including being in the geographic area of more than one location.  As a summary, the following locations were included in the warrant:

    a.  Location 1 – 2609 N. Fratney Street, Milwaukee, Wisconsin on August 17, 2024

    b.  Location 2 – Intersection of W. Center Street and N. 27th Street in Milwaukee on August 17, 2024

    c.  Location 3 – Intersection of W. Center Street and N. Appleton Avenue in Milwaukee on August 17, 2024

    d.  Location 4 – Intersection of North on N. 91st Street and W. Silver Spring Drive in Milwaukee on August 17, 2024

**Analysis of Timing Advance Area Search Data**

26. The information was analyzed by the Federal Bureau of Investigation (FBI) Cellular Analysis Survey Team (CAST) who provided information to investigators and summarized the information below as the initial identification of 414-554-3146 and 414-368-7042.

27. An initial review of the data responsive to the area search warrant identified that 414-554-3146 was the only device that matched 3 of the 4 location files. Furthermore, there were approximately six (6) devices that matched 2 different location files. Each of the data for those six (6) devices were reviewed further by looking into the detail of the records, including such parameters as those that had records consistent with the timing of the events in each location and identifying any device that also had records in the area of initial crime scene. This additional analysis identified a device which was later revealed as 414-368-7042 after additional legal process.

**414-554-3146 and Kalen Ostrowski**

28. FBI Special Agent Rienerth conducted the initial analysis of the Timing Advance records and identified a cellular device assigned telephone number 414-554-3146. The Timing Advance Records showed the following (denoted in blue in the below graphic):

   a. 414-554-3146 connected with towers in the area of the carjacking scene (Location 1) at 0524 and 0526 hours and at 0526 had a distance from tower measurement consistent with the area of the carjacking scene.

   b. 414-554-3146 then connected with towers incrementally consistent with moving in a west direction from the carjacking scene. This location information showed 414-554-3146 connecting to different towers at 0535

12

and 0539 consistent with that movement west towards the areas of

Location 2 and Location 3.



    a.   The last record in the area search for 414-554-3146 was approximately

0.92 miles and approximately from the tower and approximately four (4)

minutes after MPD attempted to initiate the traffic stop described within.

As noted previously, the records are consistent with travel towards the

area of Location 3 which is located at W. Center Street and W. Appleton

Avenue which is where MPD Officers previously reported losing sight of

the fleeing victim's vehicle.

29.    Special Agent Rutter reviewed MPD Officer Gregory's Squad Camera footage

from the aforementioned fleeing/eluding pursuit.  SA Rutter observed a black four door sedan

consistent with the suspect vehicle immediately preceding the victim's vehicle traveling West on

W. Center Street through N. 27th Street prior to the initiation on the pursuit. Your affiant is aware one of the carjacking suspects was a passenger inside of Kalen Ostrowski's Toyota Camry while the other suspect was driving the victim's vehicle. The below screenshots from the squad camera footage show the suspect vehicle and the victim's vehicle traveling West on W. Center Street shortly after passing through N. 27th Street before MPD conducted a u-turn to initiate the traffic stop turned pursuit.







30.     Your affiant is aware the location, date and time from the above screenshot and video is consistent with the reviewed location data placing 414-554-3146 in the same general area around the same time.

15

31.     Your affiant believes this analysis shows the device's connections were consistent with surveillance camera and police squad camera recordings which documented the suspect vehicle and victim's vehicle's egressing West from the carjacking scene.

32.     A search of public record aggregating databases commonly utilized by law enforcement revealed 414-554-3146 to be associated with Kalen C. Ostrowski (DOB: XX/XX/2005) as recently as May 2024.

33.     Affiant reviewed records maintained by Wisconsin Department of Transportation which showed that Kalen Ostrowski is the registered owner of a black 2020 Toyota Camry "Night Shade" edition 4-door sedan.  The vehicle is registered with Wisconsin license plate AUA2206 and VIN: 4T1G11AKXLU335910.  The vehicle is registered to Kalen Ostrowski at 3260 W. Allerton Avenue in Greenfield, Wisconsin **(Premises)** and the registration remains current as of October 31, 2024.

34.     Your affiant is aware through an online VIN query that Kalen Ostrowski's Toyota Camry is equipped with a cellular antenna that is connected to AT&T's cellular network.  This network connection functions regardless of whether the vehicle owner is paying for access to the connected services.  A Federal grand jury subpoena to Toyota Motor North America revealed that Kalen Ostrowksi's vehicle with VIN: 4T1G11AKXLU335910 is assigned IMEI number: 015267002589966.

35.     Below is a screenshot of the carjacking suspect vehicle as well as a stock image from the internet of a black 2020 Toyota Camry Night Shade edition.  Your affiant finds this vehicle to be consistent with that of the suspect vehicle captured by security cameras during the

16

carjacking. It should be noted Milwaukee Police Department Det. Bongel previously hypothesized the suspect vehicle could be a black Toyota Camry in his video surveillance follow-up report.





36. Affiant has further reviewed Milwaukee Police Department case C2410120009 reports which reflect on October 12, 2024, Kalen Ostrowski provided his telephone number as 414-554-3146 to Milwaukee Police Department Officers during a non-fatal shooting investigation near 238 E. Knapp Street in Downtown Milwaukee. A shooting victim was admitted to St.

17

Joseph's Hospital with multiple gunshot wounds to their legs and hands. Kalen Ostrowski was identified as the shooter and was arrested by responding officers on scene. Kalen Ostrowski was found to be in possession of a black Springfield XPS-9 pistol bearing serial number BA678605. Your affiant is aware this is the same firearm previously found in the possession of Kalen Ostrowski by Oak Creek Police Department in August 2023 which had been previously purchased by his mother Stacey Barwick.

      a.   Kalen Ostrowski was charged with 1st Degree Reckless Injury under Milwaukee County case 2024CF004905.

      b.   Kalen Ostrowski provided his current address to Milwaukee County courts as 9111 W. Morgan Avenue, Apt. 4, in Milwaukee, Wisconsin as of October 16, 2024. Affiant subsequently queried We Energies regarding that address and determined that Ostrowski vacated that residence in December 2024. Kalen Ostrowski provided his forwarded address to We Energies as 3260 W. Allerton Avenue.

37.     Your affiant is aware Kalen Ostrowski has no previous felony convictions.

38.     Your affiant is aware the firearm recovered from Kalen Ostrowski on October 12, 2024 did not match the physical description of the firearm provided by the carjacking victim. Your affiant is aware the described silver handgun is still outstanding and is not believed to have been recovered as of March 3, 2025.

39.     On November 21, 2024, agents located a commercial license plate reader listing for the Toyota Camry which captured the vehicle parked on November 1, 2024 at Don Jacobs Toyota located at 5727 S. 27th Street in Milwaukee, Wisconsin.

40.     On the same date, SA Rutter and SA Carlson traveled to Don Jacobs Toyota and observed the Toyota Camry parked outside the service department.  Agents met with General Manager, Dustin Boundy and learned Kalen Ostrowski dropped off the Toyota Camry at Don Jacobs Toyota on October 7, 2024, for body work.  Kalen Ostrowski was documented as the vehicle owner and agents observed his mother's name, Stacey Barwick was also handwritten on the service records.  Kalen Ostrowski's contact number was documented as 414-554-3146.  Mr. Boundy explained telephone number 414-554-3146 was the number utilized by Don Jacobs Toyota to communicate with Kalen Ostrowski.

41.     On November 26, 2024, SA Carlson reviewed customer records from Don Jacobs Toyota, obtained via grand jury subpoena.  The records, which stated they were created on July 19, 2023, state OSTROWSKI resides at "3260 W. Allerton Avenue, Milwaukee, Wisconsin".  The records indicate OSTROWSKI's phone number is (414) 554-3146.

### Toyota and AT&T Search Warrants

42.     On December 10, 2024, the Honorable Nancy Joseph, U.S. Magistrate Judge in the Eastern District of Wisconsin, signed a federal search warrant which authorized the collection of historical timing advance data from AT&T related to the Toyota Camry bearing Wisconsin license plate AUA2206 belonging to Kalen Ostrowski.  The returned cellular data and information was then analyzed by FBI SA/CAST Analyst Rienerth who found the vehicle's historical timing advance location data to be consistent with the previous timing advance data for Kalen Ostrowski's cellular device 414-554-3146 and showed activity in the geographic areas of/around the carjacking location on August 17, 2024.  Additionally, SA Rienerth found the records were also consistent with travel West during the previously denoted times following the carjacking incident consistent

19

with the flight path from the carjacking scene.

43.    Also on December 10, 2024, the Honorable Nancy Joseph, U.S. Magistrate Judge in the Eastern District of Wisconsin, signed a federal search warrant authorizing the collection of GPS records and information associated with the Toyota Camry bearing Wisconsin license plate AUA2206 belonging to Kalen Ostrowski.  The response from Toyota contained hundreds of thousands of GPS data points and corroborated the previous understanding of Kalen Ostrowski's vehicle's movements leading up to and following the carjacking incident on August 17, 2024.

44.    SA Rutter reviewed those GPS records which revealed Kalen Ostrowski's Toyota Camry's onboard GPS device logged locations consistent with the vehicle's travel South on N. Fratney Street between E. Center Street and E. Clarke Street at approximately 5:26 AM on August 17, 2024 before turning West onto E. Clarke Street.  The locations logged suggest that the vehicle then stopped for approximately one minute in front of 726 E. Clarke Street before continuing West on E. Clarke Street.  Your affiant is aware security cameras revealed this is approximately where the suspect vehicle was stopped and for the same approximate duration of time.  See earlier paragraph detailing MPD Det. Bongel's review of security camera footage for a screenshot of the suspect vehicle parked in front of 726 E. Clarke Street.  See below screenshot showing the GPS records for the Toyota Camry at approximately 5:26 AM on August 17, 2024.

20



45.     SA Rutter conducted further analysis of the Toyota GPS records and observed the Camry's movements, as indicated through review of the progression of GPS data points over time, shortly before the carjacking incident to be inconsistent with normal travel between two locations and instead depicted irregular driving behavior.  The progression of the vehicle's GPS coordinates, as reviewed by SA Rutter, appeared to indicate the vehicle circled in the general area and did not travel in direct path between two points consistent with normal travel.

46.     SA Rutter conducted subsequent analysis of the Toyota GPS records and compared them against MPD Officer Gregory's squad camera footage.  SA Rutter observed the GPS records for Kalen Ostrowski's vehicle placed the vehicle at the intersection of W. Center Street and N. 27th Street in Milwaukee, Wisconsin at approximately 5:35 AM on August 17, 2024.  Your affiant is aware this location record coincides with Officer Gregory's squad camera footage which showed the suspect vehicle to be traveling in a manner consistent with the historical GPS movement records of Kalen Ostrowski's Toyota Camry.

21

47.     GPS records also indicated that Kalen Ostrowski's Toyota Camry's GPS device appeared to stop briefly after driving West through the intersection of W. Center Street and N. 29th Street in Milwaukee.  SA Rutter reviewed MPD Officer Gregory's squad camera footage again and observed the suspect vehicle to pull over and allow the squad to continue pursuing the victim's Dodge Durango.  Your affiant is aware this location record coincides with Officer Gregory's squad camera footage and shows the suspect vehicle behaving in a manner consistent with the historical GPS movement records of Kalen Ostrowski's Toyota Camry.  Your affiant is also aware one of the carjacking suspects was inside of Kalen Ostrowski's Toyota Camry at this time.  See below screenshot from Officer Gregory's squad camera and screenshot showing the GPS movements of Kalen Ostrowski's Toyota Camry.





48.     Your affiant is aware the GPS records for Kalen Ostrowski's Toyota Camry are consistent with the previous understanding of the vehicle's movements leading up to and following the carjacking incident as previously understood based on analysis of both the historical timing advance data for 414-554-3146 and the historical timing advance data for the cellular antenna inside of his Toyota Camry.

49.     SA Rutter conducted additional review of GPS records associated with Kalen Ostrowski's Toyota Camry following the events of the carjacking.  GPS records revealed Kalen Ostrowski's Toyota Camry went to 8500 W. Fond du Lac Avenue at the below listed times on August 17, 2024 after the carjacking incident.

    a.  7:45 AM – Camry arrives in the area and stays for approximately 90 seconds.   Further record analysis showed the vehicle remained running during this timeframe.

    b.  3:07 PM – Camry arrives in the area and stay for approximately 22 minutes.

23

Further record analysis revealed the vehicle turned off at 3:10 PM and your affiant is aware people often exit their vehicles after turning them off.

c. 5:05 PM – Camry arrives in the area and stays for approximately 30 minutes. Further record analysis revealed the vehicle turned off at 5:08 PM and your affiant is aware people often exit their vehicles after turning them off.

50. Your affiant is aware the carjacking victim's vehicle was recovered adjacent to 8500 W. Fond du Lac Avenue and an unknown black male from 8500 W. Fond du Lac Avenue was seen interacting with victim's vehicle shortly before its recovery by MPD on August 18, 2024. Your affiant is aware any digital images taken of the vehicle by this unknown black male could reasonably appear in electronic conversations occurring between the co-conspirators.

51. Kalen Ostrowski's Toyota Camry returned to the area of 9111 W. Morgan Avenue in Milwaukee at approximately 11:21 PM on August 17, 2024 and no GPS records exist until 10:41 AM the following day. Further record analysis revealed the vehicle turned off at 11:24 PM.

52. Additionally, your affiant is aware through training and experience that users of cellular devices who are engaged in criminal activity commonly need to use those devices, sometimes smartphone applications, to communicate or coordinate their criminal actions. Furthermore, your affiant is aware these communications will not always present evidence thereof during review of traditional call data records. Lastly, your affiant is aware these applications often include the capability to store the content locally on the device and this content is only capable of being retrieved through forensic extraction of the device/s. The seizure and extraction of electronic

24

information from devices associated with Kalen Ostrowski would likely yield information relevant to the carjacking investigation and other co-conspirators and their involvement. Your affiant is aware the absence of a physical device from historical location records does not absolutely preclude that device from containing evidence as those engaged in criminal activity may use one device to arrange a crime and another device to carry out the crime.

53.     SA Rutter also located a temporary but publicly visible "story" posted by Kalen Ostrowski to his Instagram on January 29, 2025.  In this image, Kalen Ostrowski can be seen standing in front of a bathroom mirror holding what appeared to be a large quantity of United States currency.  The apparent United States currency was separated into numerous stacks, and each wrapped with rubber bands.  Your affiant is aware these rubber band stacks of United States currency appear consistent with the apparent United States currency photographs Kalen Ostrowski posted on January 1, 2025 with a notable difference being there is more of it now. Please refer to the photograph itself below.

**Residential Search Warrant at 3260 W. Allerton Avenue**

54.     On February 24, 2025, ATF executed a federal search warrant at 3260 W. Allerton Avenue in Greenfield, Wisconsin.  The Honorable Nancy Joseph, U.S. Magistrate Judge in the Eastern District of Wisconsin, authorized this search warrant on February 13, 2025.  The warrant included Kalen Ostrowski's person, the residence located at 3260 W. Allerton Avenue, and a Toyota Camry sedan bearing Wisconsin license plate AUA2206. Your affiant knows the following subjects to be associated with 3260 W. Allerton Avenue based on review of utility information, vehicle registration, common database information and surveillance: Kalen Ostrowski, Stacey

Barwick, and Kathleen Rich.

55.     SA Rutter and SA Carlson located Kalen Ostrowski at the Milwaukee County Safety Building at 821 W. State Street in Milwaukee, Wisconsin.  Kalen Ostrowski was present in Courtroom 316 for a status conference related to his open State of Wisconsin felony 1st Degree RES case charged under 2024CF004905.  After the hearing, Kalen Ostrowski was escorted to a side room by Milwaukee County Sheriff's Deputies where agents were waiting.  Kalen Ostrowski was informed of the search warrant and submitted to the search of his person without incident. Recovered from his person was an Apple iPhone in a black case. No interview occurred with Kalen Ostrowski at the request of his attorney Stephen Sargent.  Contemporaneous to the search of his person, the search warrant was also executed at 3260 W. Allerton Avenue.

56.     During the course of the search, numerous items of evidentiary value were located. Many of these evidentiary items were found in Room 1 which contained indicia suggesting this room belonged to Kalen Ostrowski

57.     Agents located identifiers for Kalen Ostrowski in the first bedroom off the living room (hereafter, Room 1).  Room 1 occupied space along the east side of the residence.  In this room agents located mail and medication for Kalen Ostrowski in and on the dresser.  Agents also located the spare key for Kalen Ostrowski's Toyota Camry sitting atop the dresser in Room 1. Inside Room 1's dresser drawer, agents located a Wisconsin probationary driver's license for Kalen Ostrowski which expired in April 2024.  Clothing and footwear of his approximate sizing was also located in the closet of Room 1.  Based on the presence of these identifiers, affiant believes Room 1 is the bedroom of Kalen Ostrowski.  Importantly, Room 1 is where agents located

26

the following:

    a.   On the floor and openly in the middle of Room 1, agents located a Louis Vuitton duffle bag containing approximately 2.6 pounds (including the weight of packaging) of green leafy substance in assorted types of packaging including, but not limited to, vacuum sealed bag, large plastic bags and commercial packaging, , glass jars, small plastic jeweler bags and apparent THC gummies.

    b.   Digital scale located in the dresser drawer alongside additional green leafy substance and suspected THC gummies totaling approximately 1.8 pounds including the weight of packaging. It should be noted this packaging including a plastic container, small plastic jeweler bags and glass jars which add considerable weight.

    c.   Remington 870 Shotgun bearing serial number RAS144912 found under the bed.

    d.   $11,771.00 in United States Currency found in the closet

    e.   Apple iPhone found on desk

    f.   Apple iPhone found in dresser drawer

### Identification of Areon Davis and Life360

58.    On February 24, 2025, SA Carlson reviewed the Apple iPhone in a black case

recovered from Ostrowski's person. SA Carlson specifically reviewed photographs located on the phone and SA Carlson located the following photograph depicting Ostrowski and two black males sitting on his aforementioned Toyota Camry in the area of "Old North Milwaukee" on August 17, 2024 at 1:22 AM. Your affiant is aware that the carjacking took place only a few hours after this photograph was taken.



59.     On that same date, SA Carlson sent the above photograph to the Mid-States Organized Crime Information Center (MOCIC) who conducted a facial recognition search. SA Carlson was notified by Criminal Information Specialist Dan Wellen, that the black male depicted above, in the middle position, wearing a tan colored t-shirt was possibly identified as Areon Davis (B/M, DOB XX/XX/2003). SA Carlson then deconflicted Davis with MPD and learned Areon

Davis has been in custody since December 10, 2024, stemming from a 1st Degree Intentional Homicide charge (MPD IR no. C241107194).

60.     After learning of the possible facial recognition hit involving DAVIS, your affiant reviewed several Milwaukee County booking photographs for DAVIS. After reviewing the booking photographs, your affiant believes the person in the booking photographs is consistent in appearance and features with the person seated between OSTROWSKI and the other unidentified-person in the above-described photograph taken on August 17, 2024.

61.     Your affiant reviewed the associated MPD reports associated with that homicide investigation which stated on November 20, 2024, MPD detectives identified the phone number **414-940-0135** as a phone number belonging to Davis. According to those reports, A.H., Davis' sister, stated, during an interview with detectives, **414-940-0135** was her "blood brother" Areon DAVIS' phone number, and she had the number stored in her phone. During this same interview, A.H. stated Davis had a Life360 application installed on his phone which she used to check on DAVIS' location.

      a.   According to the Life360 website, Life360 is a "real-time location-sharing app designed to help families stay connected and safe. Users can create private groups of people called "circles", wherein each member of the group shares their location in real-time with other users. The app can be used to track loved ones, receive notifications if they need help, and even find them if they get lost. Life360 also has features such as location safety, advanced driving, digital safety, emergency assistance features, and Tile Bluetooth

trackers."

62.     MPD reports reflect that officers subsequently obtained subscriber information and location data, detailing the devices movements around the time of the homicide, for the Life360 account for phone number **(414) 940-0135**, and received the following account identifiers:

    a.  User ID: 2b1a3d8f-3073-4383-ad54-3a88a47eeafd

    b.  Name: Paid Ape

    c.  Email: Areondavis10@gmail.com

    d.  Phone Number: **414-940-0135**

    e.  Created: 03/17/2023

63.     On February 25, 2025, SA Rienerth reviewed timing advanced data obtained via federal search warrant related to the August 17, 2024 carjacking. SA Rienerth stated the data showed that a device using phone number **414-940-0135 (Davis)** was present in the records and the device had records consistent with being present in the area of the carjacking around the time in which the carjacking occurred.  More specifically, **414-940-0135 (Davis)** had distance from tower measurements consistent with the area of the carjacking around 5:26 AM and 5:27 AM. These location records were also consistent with the location records for the aforementioned Toyota Camry belonging to Ostrowski, and **414-554-3146 (Ostrowski)** around that time, which is just prior to when the vehicle left the area and was observed traveling West on West Center Street.

64.     Additionally, SA Rienerth observed that the phone number had telephonic communications with both **414-554-3146 (Ostrowski)** and **262-270-9882 (Johnson)** over multiple months, including in the evening hours on August 17, 2024.

a. It should be noted, agents have previously identified phone number **262-270-9882** as being associated with Michael Johnson, because Johnson lists this phone number with Wisconsin Probation and Parole.

b. It should be noted, Johnson's fingerprint was located on the stolen Durango by MPD during their processing of the vehicle following its recovery.

65. The purpose of this warrant is to provide law enforcement and the government authority to search the Life360 account described in Attachment A for additional crimes, including possession of controlled substance in violation of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c)(use of a firearm during the commission of a violent crime), Title 18 U.S.C. § 922(g)(1) (prohibited person in possession of a firearm) and Title 18 U.S.C. § 1951 (Hobbs Act Robbery).

# **ATTACHMENT A**

## **Property to Be Searched**

This warrant applies to information that is stored at the premises owned, maintained, or controlled by Life360, a company headquartered in San Mateo, California, which includes:

- User ID: 2b1a3d8f-3073-4383-ad54-3a88a47eeafd

- Name: Paid Ape

- Email: Areondavis10@gmail.com

- Phone Number: 1-414-940-0135

- Areon R. Davis (DOB XX/XX/2003)

32

## ATTACHMENT B

*Property to be seized*

**I.      Information to be Disclosed by Life360**

To the extent that the information described in Attachment A is within the possession, custody, or control of Life360, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Life360, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Life360is required to disclose the following information to the government for each account listed in Attachment A from August 3, 2024 to August 31, 2024:

a. All records or other information regarding the identification of the accounts listed in Attachment A, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, login IP addresses associated with session times and dates, account status, e-mail addresses provided during registration, methods of connecting, log files, device information i.e. model and IMEI numbers, any available profile pictures, means and source of payment (including any credit or bank account number), and;

b. All records pertaining to communication between Life360 and any person regarding the accounts listed in Attachment A, including contacts with support services and records of actions taken.

d. All records, including GPS location data, for any person or identifier listed in Attachment A between August 3, 2024 and August 31, 2024.

33

**II.      Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of, or was property

used in, committing crimes involving, violations of 18 U.S.C. §§ 2, 924(c) & 2119 for a carjacking.